UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


JENICE GOLSON-DUNLAP, TRUSTEE for )
WELLMAN THERMAL SYSTEMS            )
CORPORATION,                      )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )        1:05-cv-1191-JDT-TAB
                                  )
AMERICAN MOTORISTS INSURANCE      )
COMPANY; COLUMBIA CASUALTY        )
COMPANY; GREAT AMERICAN           )
INSURANCE COMPANY; GULF           )
UNDERWRITERS INSURANCE            )
COMPANY; ILLINOIS NATIONAL        )
INSURANCE COMPANY OF              )
PITTSBURGH, PA; NEW HAMPSHIRE     )
INSURANCE COMPANY; TWIN CITY FIRE )
INSURANCE COMPANY; WESTCHESTER    )
FIRE INSURANCE COMPANY,           )
                                  )
            Defendants.           )
                                  )


### ENTRY ON PENDING MOTIONS (DOCUMENT NOS. 77, 92, 110, 129, 139 & 173)[1]


      This case is a somewhat tangled mess which unfortunately has not become

more streamlined as it has traveled through the bankruptcy and district courts.  The

same controversy has also taken a short trip to an Indiana state court, only to return to

federal court via removal.  Throughout these journeys, creative lawyering has posed

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

several procedural and ethical dilemmas that the court hopes to resolve through this entry.

Plaintiff in this matter is the Trustee for the Bankruptcy Estate of Wellman Thermal Systems Corporation ("Wellman")[2]. Defendants are all insurance companies who, at one time or another prior to Wellman's bankruptcy, provided general liability insurance to Wellman. This is an adversary proceeding wherein Wellman's bankruptcy estate is seeking a declaratory judgment with respect to whether or not Defendants owe it coverage and a defense against environmental damage claims raised against the estate. The environmental claims were raised as a result of Wellman allegedly polluting the property it leased for use as a manufacturing facility. By earlier order of this court, reference to the bankruptcy court was withdrawn because, among other considerations, the bankruptcy estate is seeking to enforce Wellman's rights under state contract law and is not invoking core rights or protections created by federal bankruptcy law. Subsequent to the decision on the request to withdraw reference, a number of motions have been filed, including motions to dismiss, from both sides, and a motion to disqualify counsel for the Trustee. They include:

Docket #77 - Defendants' Motion to Dismiss

Document #110 - Defendant Westchester Fire Insurance Company's Motion to Disqualify Plews Shadley Racher & Braun

---

[2] Wellman is a holding corporation which owned several subsidiaries. When it filed bankruptcy, so did the subsidiaries. Those bankruptcies were consolidated and there is no substantive reason here to differentiate between the companies. So, for ease of reference, the court will simply use "Wellman" to refer to the bankrupt companies as a whole.

Document #129 - Voluntary Motion to Dismiss without
Prejudice

Document #139 - Defendant Westchester Fire Insurance
Company's L.R. 7.5(A) Request for Oral Argument

Document #173 - Defendant Westchester Fire Insurance
Company's Motion to Supplement Factual Record
Supporting Motion to Disqualify

This entry will address those motions.

### *Factual Background*

Wellman manufactured industrial process heating systems at a plant in

Shelbyville, Indiana, from 1992 through 2002.  The manufacturing process required

metal cutting, degreasing, electroplating, painting and other processes which can have

environmental impact on the property where they are performed.  Wellman leased the

property where the plant operated from AnaMag, Inc. ("AnaMag").  However, AnaMag

and the property at issue were the subject of financial woes prior to that lease.

In 1983, Chase Commercial Corporation ("Chase") took two notes totaling

$18,000,000 from Anamag, which were secured by the property which Wellman would

eventually lease.  AnaMag defaulted on the notes in 1987 and entered bankruptcy in

1988.  Chase filed a foreclosure action during the course of the bankruptcy in an

attempt to force a sale and collect the $9,000,000 or so left on the notes.  AnaMag's

bankruptcy was closed without a discharge in 1993 and Chase's foreclosure action

subsequently bogged down, purportedly because of suspected environmental issues at

the property.  Chase halted the foreclosure action and sold the notes and security interest to Millenium LLC ("Millenium") in 1998.

Wellman filed for bankruptcy in January of 2003 and ceased operations in April 2003, prior to the lease expiring in August of that year.  After the voluntary bankruptcy petition under Chapter 7 was converted to a Chapter 11 proceeding, Jenice Golson-Dunlap was appointed Trustee.  In June 2003, the receiver for AnaMag filed a creditor's claim in Wellman's bankruptcy, claiming it was due approximately $150,000 under the lease.  Millenium filed a claim on the first day of December 2003, claiming that as a holder of a security interest in the property owned by AnaMag, it had a claim for damages in an amount between $5,000,000 and $18,000,000 as a result of environmental damage to the property inflicted by Wellman's operations.[3]  Millenium, represented by the law firm Plews Shadley Racher & Braun ("PSRB"), offered a preliminary United States EPA assessment on the property, which was prepared in 1994 and released in 1997, as evidence of the validity of its claim.

Shortly after receiving the Millenium claim, the Trustee applied to the bankruptcy court for permission to retain Keramida Environmental, Inc. ("Keramida") to assist in analyzing and evaluating the merits of any environmental claims made against the estate.  That request was granted by the bankruptcy court on February 12, 2004.  Next,

---

[3]  If Chase was owed in the area of $9,000,000 on the notes when it sought to foreclose, Millenium no doubt paid something less than $9,000,000 to acquire the notes and mortgage. That being the case, the court has no idea how Millenium, who has never owned the property, could claim potential damages in an amount exceeding the price it paid for the notes.  This would appear to be the start of the creative posturing which the parties have engaged in to advance their positions.

-4-

having received a degree of corroboration of Millenium's claims by Keramida[4], the Trustee asked the bankruptcy court for authority to employ PSRB to pursue insurance coverage for the environmental claims made against the estate.  At that time PSRB was still representing the only party who had registered an environmental claim against the bankruptcy estate.  However, despite the facially apparent conflict, the Trustee's own legal counsel was of the opinion that experienced environmental legal counsel was necessary to pursue coverage and recommended to the Trustee that she retain PSRB to seek out coverage from the numerous insurers who had provided general liability coverage to Wellman over the years.

The bankruptcy court approved the retention of PSRB and an agreement which channeled the proceeds of any recovery on the insurance polices to pay for, in order: 1) Trustee fees and expenses; 2) the fees and expenses of Keramida and the Trustee's regular legal counsel[5]; 3) PSRB expenses and a 1/3 contingency fee; 4) remediation of the property; and 5) general prioritized creditor obligations of the Wellman bankruptcy

---

[4]  The Trustee represented to the bankruptcy court that Keramida's on site visual inspection resulted in its experts providing an estimate of at least $2,000,000 in costs to eliminate apparent contamination and a recommendation for more thorough testing to flesh out the true extent of contamination.  The Trustee continued to retain Keramida to conduct further investigation at the sight despite an admission in her bankruptcy pleadings that Keramida's work would help Millenium prove its claim against the estate.

[5]  It was an amendment to the original agreement on the disbursement of policy proceeds which added Trustee's general legal counsel as a potential payee at the second step. Frankly, the court is unsure why policy proceeds would be directed to pay for the fees and expenses of the general legal counsel for the Trustee when it was that counsel which encouraged the Trustee to retain PSRB to pursue proceeds from the insurance policies because of its own lack of expertise in that area.

estate.[6]  On February 10, 2005, Wellman brought this action in the bankruptcy court as an adversary proceeding.  Ten insurers were named as defendants in the declaratory judgment action and they won the first battle when this court agreed to withdraw the reference from the bankruptcy court.  In August 2005, the new receiver for AnaMag amended its earlier claim in the bankruptcy to include a claim for environmental damage in addition to the lost lease payments.  This was the first point in time that the actual owner of the property registered a claim regarding environmental damage.  In other words, for the first time it appeared the horse might at least be drawing even with the cart.

Finally, on November 14, 2005, Millenium sold all its rights and interests in the notes and mortgage, via quitclaim deed, to Progress Parkway, LLC ("Progress"), which was also designated as the transferee of Millenium's environmental damage claim in the bankruptcy proceeding.  It has been represented to both this court and the bankruptcy court that Progress has since purchased the actual property in addition to the notes and mortgage; however, this court's review of the bankruptcy court's electronic docket did not uncover any notice of the transfer or assignment of the bankruptcy court claim (#109 in claim docket for Wellman bankruptcy) filed on behalf of Anamag's receiver.

---

[6]  In yet another burst of "creativity," PSRB and the Trustee apparently concluded that they might be able to collect enough from all the insurers to pay off some of the debts of the estate.  The court can not imagine how any of the insurers would be obligated to pay for more than the environmental damages to the property that Wellman is liable for, but evidently some creative, non-frivolous theory exists which will be argued at a later date.

After obtaining a withdrawal of the reference to bankruptcy court, all but one of the defendant insurers filed or joined in the filing of a motion to dismiss.[7]  They argue in the motion that this court lacks jurisdiction because there is no conceivable effect on the administration of available estate assets and therefore the proceeding is not "related to" the bankruptcy.  However, the insurance policies are assets of the estate, so that argument proves an immediate non-starter.   The insurers complain that the original adversary proceeding was brought in the name of Wellman and not the Trustee, but subsequent substitution of the Trustee solved that dispute as well.

Defendants also pursue a number of other arguments in their motion to dismiss. First, they contend that there is no actual case or controversy here because Millenium simply holds a note on the property and has no standing to raise a claim against Wellman or its estate.  Further, they argue that as a note holder, Millenium's claim is barred by the statute of limitations.  It is also argued by the insurers that any claim for damage here is too speculative in light of the fact that the government has yet to indicate that remediation of the property is required.  According to the insurers, the dispute between Millenium and the estate is actually a "friendly" one designed to allow each to profit from policy proceeds which otherwise might not be available.  The fact that PSRB serves as counsel to both Millenium and the Trustee lends credence to the notion that Millenium and the Trustee joined forces.  Most of these arguments boil down

---

[7]  By the way, Columbia Casualty Company moved to join in the Defendants' motion to dismiss.  (Document No. 92.)  The court never formally addressed that motion on the docket. That oversight is now corrected and Columbia's request to join in the motion to dismiss is **GRANTED**.

to the insurers' core contention that the estate has suffered no injury in fact and therefore there is a lack of case or controversy here, as required for jurisdiction. Following the filing of the motion to dismiss, one of the defendants, Westchester Fire Insurance Company ("Westchester"), filed a motion seeking to disqualify PSRB from further representation of any party in matters related to the Wellman bankruptcy because the firm was attempting to simultaneously represent two parties on the opposite sides of the same contested matter.  Three other insurers have joined in that motion.

With both a motion to disqualify counsel and a motion to dismiss pending against the estate, the Trustee chose not to meet the insurers dismissal arguments head on. Rather, it filed an identical action in state court and a motion in this case which seeks permission to voluntarily dismiss in order that the dispute can be heard and resolved in state court.  According to the Trustee, she simply wants the issues resolved and does not wish to waste time with procedural battles over which venue is appropriate for resolving the dispute.  Therefore, she says, she moved under Fed. R. Civ. P. 41(a)(2) for authority to voluntarily dismiss this matter in order to move forward in state court.  Of course, dismissal was the remedy requested by the insurers, but a new venue in state court was not part of the defense position.  Evidently, the Trustee has a venue preference, but that preference has changed with time.

Circuity would have been incomplete if the insurers had not taken the next step, which was removing the Trustee's new state court action to the bankruptcy court.  While that case is currently pending as an adversary matter in bankruptcy court, it seems

-8-

evident to all that it would make little sense to allow that matter to continue there when this court has already withdrawn the bankruptcy court reference with respect to this identical action.  So, as a practical matter, that new case should either be consolidated with and absorbed by this one or sent back to state court so that the substantive battle can be waged there.  For any number of reasons, the court is of the opinion that the battle should be waged here.

Apparently, the insurers came to that same conclusion, because in their responses to the Trustee's cross motion for voluntary dismissal, those insurers who have not been dismissed from the case, settled or entered into a tentative agreement with the Trustee, have abandoned their efforts to have the court dismiss the matter and, in fact, have joined forces to argue that the problems with jurisdiction that previously existed have been cured.  According to those insurers, the initial defense motion seeking dismissal was necessary due to certain "deficiencies" caused by Plaintiff, but now that the Trustee has been named as the real party in interest and those other "deficiencies" have been cured, it would be counterproductive to move the case elsewhere.  Nonetheless, nary a defendant went so far as to withdraw its earlier motion to dismiss or joinder in that motion.

### *Discussion*

The defendant insurers raise some interesting issues in their initial motion to dismiss.  However, because the motion has since been abandoned by those defendants still actively contesting the Trustee's claim, the motion and issues therein deserve no

further attention from this court.  *See Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003).  Denying the insurers motion to dismiss does not resolve the question of what venue should play host to the substantive dispute, because the Trustee has asked for permission to voluntarily dismiss this case and has stated in her brief that she will seek an order of remand with regard to the recently removed state court action if the authorization to voluntarily dismiss is granted.  Consequently, the arguments for keeping the case here instead of allowing a state court to settle this insurance contract coverage question must be examined more closely.

The dismissal of a complaint without prejudice under Rule 41(a)(2) is within the sound discretion of the district court and is, generally, reversed only if the trial court abuses that discretion.  *F.D.I.C. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992).  "The district court abuses its discretion only when it can be established [that] the defendant will suffer 'plain legal prejudice' as the result of the district court's dismissal of the plaintiff's action."  *Id.* (quoting *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir.), *cert. denied*, 479 U.S. 961 (1986)).  Factors to be considered in determining if defendants will suffer such prejudice include the amount and expense of discovery and other trial preparation, any delay on the part of plaintiff, the lack of a good explanation for the need to take a dismissal and whether any summary judgment motion has been filed.  *Id.*  Plaintiff bears the burden of persuading the trial court that dismissal is warranted.  *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994).

In this instance there has been a significant time and money investment in the discovery process.  Pursuant to the court's direction, an electronic document depository

has been established to allow the considerable number of parties to have a well organized and efficient approach to sharing documents.  This required a designation of lead defense counsel, the hiring of a vendor, and the design of a unique numbering system and protocol for document deposits.  In October 2006 the first two DVD's of this document library were produced and contain over twenty thousand pages.  More documents are expected to be added to that depository as well.  The risk that such a sizeable investment would be altered or abandoned with a change in venue, though small, weighs considerably in favor of keeping the matter here.

While no one party escapes finger-pointing with respect to posturing and unnecessary delays, the failure of Plaintiff at the outset to name the Trustee as the very obvious actual party in interest may have triggered the first dismissal motion.  In addition, the estate sought extensions for four months before responding to that motion.  This case has been on the court's docket since August of 2005 and the motion to withdraw reference from the bankruptcy court was granted in October of that year.  While the Trustee's motion may have been prompted by the intervening defense tactics of the insurers, the case is still a year into the discovery stage before the Trustee seeks to voluntarily dismiss it.  Further, some of the issues raised in the insurers' since abandoned motion to dismiss seemed well taken.

In terms of an explanation for its request to dismiss, the Trustee states that she is simply allowing the insurers to have what they requested in their motion and to end the procedural maneuvering in favor of bringing the matter closer to its substantive conclusion.  Further, she contends that the state standard for determining if there is a

"case or controversy" is broader than the federal standard, thereby assuring that the declaratory judgment necessary to affix coverage, if any, will be rendered.  The court finds the Trustee's assertion that she is attempting to end procedural posturing by dismissing this matter and filing an identical one in state court a bit ironic.  One might say it is merely further discourse between "the pot and the kettle."  In the end, the case and controversy argument has been abandoned anyway, leaving little if any substance to the Trustee's explanation for the requested dismissal.

Finally, the court notes that there is no summary judgment motion pending.  However, that factor alone is insufficient to outweigh the considerations just enumerated.  The balance clearly weighs in favor of the court keeping the matter here.  Plaintiff can either dismiss the state court action which was removed to the bankruptcy court or, if there remains some reason to do so, the matter can be consolidated with this case.

With the court maintaining jurisdiction of this dispute, there remains the question of whether or not PSRB has a conflict which should disqualify it from further representation in connection with this case or the bankruptcy estate.  Under these circumstances, there is no need for digging to unearth the conflict, it was patent at the time the Trustee sought the bankruptcy court's permission to hire PSRB.  PSRB represents Millenium, the party which filed the initial claim against the Wellman bankruptcy estate.  Subsequent to the bankruptcy court granting permission, it now also represents the Trustee of that same bankruptcy estate for the specific purpose of pursuing insurance coverage for the alleged liability.  While both the estate and

-12-

Millenium might benefit by a finding that coverage applies, it would be more beneficial to the estate if the issue never got that far and a determination was made that Wellman was not liable on the claim raised by Millenium.  The question that must be answered here is if there is an applicable exception to the rule barring a lawyer from representing a client if that representation will be directly adverse to another of that lawyer's clients, *see* Ind. Rules of Prof'l Conduct R. 1.7 (2003), or a reason why that rule does not apply here.

The Trustee and PSRB respond to the motion to disqualify by asserting three reasons why disqualification should not occur.  First, they argue that there is no conflict. In support of that contention, the Trustee argues that she hired PSRB for such a limited purpose that there is no conflict in such representation.  Furthermore, the Trustee and PSRB point out that the bankruptcy court judge found no conflict and, even if the bankruptcy judge was wrong, they maintain any conflict was cured when Millenium sold off its property interest and accompanying environmental damage claim to Progress.

The Trustee and PSRB also argue that the insurers have inappropriately relied on Indiana law instead of federal bankruptcy law in advancing their disqualification argument.  According to the Trustee, in bankruptcy court it is not uncommon for an attorney to represent both a creditor and the Trustee with respect to limited and specific matters where the two clients have shared interests.  In fact, they argue that the bankruptcy rules contemplate that very circumstance.  Finally, the Trustee claims that the dual representation has been going on for too long at this point for the insurers to

suddenly complain.  In other words, the passage of time should bar any effort to raise a conflict now.

Motions to disqualify a party's chosen legal counsel must be viewed with extreme caution, for their use can serve tactical or harassment purposes as opposed to the more righteous goal of protecting the attorney-client relationship.  *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721-22 (7th Cir. 1982).  Though the insurers ask that PSRB be disqualified from "any further involvement in matters relating to the bankruptcy of Wellman," at this point, the court is merely concerned with whether or not PSRB should be disqualified from continued representation of the Trustee in its so-called "special capacity" as legal counsel for the pursuit of insurance coverage.

This district operates with the Indiana Rules of Professional Conduct as its governing ethical rules.  *See* Local Rules of Disciplinary Enforcement, Rule V(B). Therefore, the Trustee's assertion that Indiana's professional responsibility rules do not apply is incorrect and PSRB would be in violation of those rules if its representation of the estate in this matter was adverse to the interests of Millenium or *vice versa*.  Ind. Rules of Prof'l Conduct R. 1.7 (2003).  Furthermore, the relevant Bankruptcy Code provisions provide guidance which is consistent with the ethical obligations of Rule 1.7 of the Indiana Rules of Professional Conduct.

### § 327. Employment of professional persons

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

11 U.S.C. § 327.

Since PSRB represented a party with a claim adverse to the estate at the time the Trustee retained the firm to pursue insurance coverage, the employment violated subsection (a) of § 327. However, there are additional subsections to § 327. Subsection (c) states that a professional is not disqualified from employment by the

-15-

Trustee because that professional represents a creditor, unless another creditor objects to such representation, in which case the court is to disallow the employment if there is an actual conflict of interest.  Subsection (e) allows the Trustee to hire an attorney who has represented the debtor, if the employment is only for a special purpose, in the best interest of the estate and the court approves of the employment.  PSRB has not represented the debtor, so subsection (e) does not provide the Trustee and PSRB with a relevant exception.  However, the court is not aware of any objection to the representation raised by any other creditor, which would seem to open the door to the application of subsection (c).

The insurers argue that employment of counsel for a "special purpose" is only authorized through subsection (e), which deals with attorneys who have previously represented the debtor, not a creditor.  In other words, according to the insurers only former legal counsel for the debtor can be hired for non-general representation of the estate.  The court finds that argument to be strained at best.  There is no well reasoned basis for allowing only former debtor's counsel to serve as "special purpose" counsel to the bankruptcy estate.  Certainly, an attorney who had represented neither creditors nor debtors previously, who also had special expertise that would assist the trustee, would not be denied an assignment to assist the estate simply because he or she had never represented the debtor.  That would be the logical extension of the argument made by the insurers, which the court rejects.  And, since no other creditor objected to PSRB being hired by the Trustee, the court finds it hard to toss aside the considered attention previously given the issue by the bankruptcy court.

The insurers have moved to supplement their record on the motion to disqualify, pointing out that the Trustee earlier shared the estate's proposed pleadings and discovery responses with an attorney for Millenium, who apparently made some changes to the language used in describing the claims being made that made them sound more substantial or valid.  A deeper investigation of all the circumstances might be warranted if Millenium were still the party holding the environmental claim against the estate.  However, that is no longer the case, and the insurers never responded to the Trustee's contention that Millenium's assignment of the claim to Progress has cured any conflict which may have existed.  In the end, not unlike circumstances in a tort claim where an insured is confident of his own liability and assigns whatever coverage rights he has to the victim of his negligence, the bankruptcy estate and any party who may have been damaged by the debtor's pollution of the property may well share similar interests.  The bankruptcy court apparently thought so, and this court will not countermand that decision.

### Conclusion

For the reasons discussed in this entry, Defendants' Motion to Dismiss (Document #77) is **DENIED**; Defendant Columbia Casualty Company's Motion to Join in the Defendants' Motion to Dismiss (Document #92) is **GRANTED**;  Plaintiff's Voluntary Motion to Dismiss Pursuant to Rule 41(A)(2) (Document #129) is **DENIED**; Defendant Westchester Fire Insurance Company's Motion to Disqualify Plews Shadley Racher & Braun (Document #110) is **DENIED**; Defendant Westchester Fire Insurance Company's Request for Oral Argument (Document #139) is **DENIED**; and, Defendant Westchester

Fire Insurance Company's Motion to Supplement Factual Record (Document #173) is **DENIED**.

ALL OF WHICH IS ENTERED this 26th day of March 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Knight S. Anderson
HILL FULWIDER MCDOWELL FUNK
MATTHEWS
knight@hfmfm.com

Jeffrey M. Boldt
LOCKE REYNOLDS LLP
jboldt@locke.com

Stephen P. Brown
PLUNKETT & COONEY PC
sbrown@plunkettcooney.com

Charles W. Browning
PLUNKETT & COONEY, P.C.
cbrowning@plunkettcooney.com

Brian C. Coffey
COHN BAUGHMAN & MARTIN
brian.coffey@mclolaw.com

Carrie Gibson Doehrmann
LOCKE REYNOLDS LLP
cdoehrmann@locke.com

Jonathan P. Emenhiser
PLEWS SHADLEY RACHER & BRAUN
jemenhiser@psrb.com

Jeffrey D. Featherstun
PLEWS SHADLEY RACHER & BRAUN
jfeather@psrb.com

Melissa Megan Hinds
BAKER & DANIELS
jeffrey.nelson@bakerd.com

Wayne S. Karbal
KARBAL COHEN ECONOMOU SILK &
DUNNE LLC
wkarbal@karballaw.com

Shannon Lee Logsdon
LEWIS & WAGNER
slogsdon@lewiswagner.com

Patricia Polis McCrory
LOCKE REYNOLDS LLP
pmccrory@locke.com

Tammy Jo Meyer
LEWIS & WAGNER
tmeyer@lewiswagner.com

Jeffrey C. Nelson
BAKER & DANIELS
jeffrey.nelson@bakerd.com

-18-

Ernesto Rafael Palomo
LORD BISSELL & BROOK LLP
epalomo@lordbissell.com

Louis T. Perry
BAKER & DANIELS
louis.perry@bakerd.com

Ginny L. Peterson
KIGHTLINGER & GRAY
gpeterson@k-glaw.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Mary K. Reeder
RILEY BENNETT & EGLOFF LLP
mreeder@rbelaw.com

Hugh E. Reynolds Jr.
LOCKE REYNOLDS LLP
hreynolds@locke.com

Mitchell D. Rose
BOLLINGER RUBERRY & GARVEY
mitch.rose@brg-law.net

Mary A. Sliwinski
COLLIAU ELENIUS MURPHY
CARLUCCIO KEENER & MORROW
mary.sliwinski@cna.com

A. Kelly Turner
LORD BISSELL & BROOK LLP
kturner@lordbissell.com

F. Ronalds Walker
PLEWS SHADLEY RACHER & BRAUN
rwalker@psrb.com

Gerald Edwin Ziebell
KARBAL COHEN ECONOMOU SILK &
DUNNE LLC
gziebell@karballaw.com